*Earl Jackson, W. M. Henry,* contra.

---

### 3356.   GEORGIA RAILWAY & ELECTRIC CO. *v.* RICH.

1. If a railway conductor, in the course of his duties on a car carrying passengers, strikes one passenger and knocks him against another passenger, injuring the latter, it is no defense to a suit brought against the company by the injured passenger that the other passenger had used opprobrious language to the conductor.
2. Under the evidence as it appears in the record, it was not error for the court to fail to charge the jury as to the general rule, usually applicable in tort cases, that the plaintiff can not recover where he, by ordinary care, could have avoided the injury.
3. The evidence fully authorizes the verdict.

DECIDED JUNE 29, 1911.

Action for damages; from city court of Atlanta—Judge Calhoun.
March 2, 1911.

*Colquitt & Conyers*, for plaintiff in error.

*W. M. Smith, F. Roland Alston*, contra.

POWELL, J.  Thus much of the facts may be stated as being undisputed: The plaintiff, an old negro woman, was a passenger on a street-car.  The conductor demanded fare of a negro man, who replied that he had paid once and would not pay again.  The dispute waged throughout a few short exchanges of words, when the conductor struck the man.  The conflict in the testimony is as to whether the plaintiff was injured or not.  The plaintiff testified that the conductor knocked the man down upon her, and thereby inflicted severe injuries upon her person; and her testimony is corroborated by those who saw the fresh physical signs upon her shortly after the occurrence.  Several witnesses testified, for the defendant, that, while the conductor struck the man, he did not knock him down upon the plaintiff, but knocked him in another direction.  The jury found a small verdict for the plaintiff.  The defendant assigns as error the following instruction of the court to the jury: "If, in the dispute about the paying of the fare, the conductor was trying to get the fare, and the passenger used opprobrious words or abusive language to the conductor, and the conductor was justified in hitting him on account of such language, then the railroad company would not be liable, provided it used as to this plaintiff that extraordinary diligence which the law required him to use.  While he might be justified in striking the passenger that he was in the fuss with, still he would not be justified in hurting this passenger, the plaintiff in this case, unless he still was in the exercise of that extreme care and caution which a prudent man would exercise under the same or similar circumstances."

1.  The contention is, that, if the conductor was justifiable in striking the other passenger, his act would not be a tort against the plaintiff; that the qualification as to the liability for a failure to exercise extraordinary care and diligence was improper and misleading.  This instruction was certainly fully as liberal to the defendant as the law will warrant.  Even if the law will ever excuse a railway conductor for resenting mere opprobrious language with violence (conductors being police officers, with power to

arrest,—see Penal Code (1910), § 926), we have no hesitancy in saying that if, in his so doing, he endangers and injures a passenger lawfully behaving himself upon the car, the conductor and his employer are liable for the injuries. Railway companies are under the duty of using extraordinary care and diligence to protect passengers, and conductors must use that high degree of care to protect them from violent, though provoked, acts of themselves, as well as of others. We are not unaware of the trying situation in which street-car conductors in many of our Southern cities are often placed by the insolent and designedly offensive conduct of that lower element of the negro race which makes it a point to take advantage of their position as passengers to use to street-car employees, while on duty, wanton and insulting language which they would not dare to use under other circumstances. The writer, who happened to be in Atlanta when the race riot occurred some five years ago, believes that this one thing of the street-car employees being required by their position to endure in patience the insults of negro passengers was, more largely than any other one thing, responsible for the engendering of the spirit which manifested itself in the riot. All the members of this court were born in this State and have lived here ever since. We are well acquainted with the character of the negro race. We know that there are good negroes and bad negroes, that a good negro is a useful and often honorable citizen, and that a bad negro is just about the meanest, the most vicious animal ever created. So we can understand the practical phases of the situation involved in the case; but as judges we must lay down rules of law which are applicable to all races alike, and it will not do to say, as a general rule of law, that a railway conductor can be allowed to imperil the safety of his passengers by his acts of violence, provoked, even though most naturally, by mere insulting or abusive language.

2. There is complaint that the court did not instruct the jury that the plaintiff was under the duty of using ordinary care to avoid the consequences of the defendant's wrong, and that if she failed in this duty she could not recover. There was nothing in the evidence to require such a charge. Cf. *G., F. & A. Ry. Co. v. Sasser,* 4 *Ga. App.* 276 (61 S. E. 505).

3. The evidence fully authorized the verdict, and there was no error in refusing a new trial.                    *Judgment affirmed.*